and we'll now move on to the next case on the calendar. Thank you, Thomas. Thomas v. Keyser, Thomas v. Wolfe, really. Let me make sure council is here. Mr. Bergstein? Yes, I'm here. Okay, great. And Mr. Vara? Yes, I'm here as well. Okay, great. So you've got 10 minutes each, but Mr. Bergstein has reserved three minutes for rebuttal. So go ahead, Mr. Bergstein, the floor is yours. Okay, thank you. May it please the court, Stephen Bergstein for the plaintiff appellant. The question before the court is whether the pro se complaint sufficiently alleges that Dr. Wolfe was deliberately indifferent to the plaintiff's serious medical needs. And we submit that the complaint suffices, there's a plausible claim for deliberate indifference. Plaintiff has to satisfy two elements under Farmer v. Brennan, the objective test and the subjective test. The objective test requires that Dr. Wolfe is aware of a condition of urgency that would cause unnecessary or wanton infliction of pain. The complaint drafted by the by the plaintiff makes it clear that he was suffering serious back pain, he calls it excruciating. Following back surgery that this pain lasted for several months. At some point, and the main allegations in the complaint appear to be between paragraphs 24 and 36. But the core allegations in the complaint are really paragraphs 35 and 36, where the plaintiff tells Dr. Wolfe that he's still in pain, the ibuprofen is just not working. It's upsetting his stomach the effects, the medication has no effect on his pain, and he still felt excruciating pain. So I think plaintiff alleges a plausible claim that he was suffering a condition of urgency in the form of serious back pain. So the question then becomes, do we have a subjective state of mind on the part of Dr. Wolfe? And I interrupted for a second Mr. Bergstein, your view is that as long as the pleading says that the plaintiff feels a lot of pain and doesn't get the opiates that they request, that's enough to meet the first prong? Well, I think the first prong is whether there's chronic and substantial pain, condition of urgency, unnecessary infliction of pain. He describes in his complaint, and he's an inmate, there's some degree of solicitude, that he had excruciating pain, an extreme pain, and that I think is enough to make out the objective test. The question becomes, you know, what was Dr. Wolfe supposed to do once she knew the plaintiff was suffering this kind of pain? And the complaint alleges in paragraph 35-36 that she affirmatively denied him anything beyond ibuprofen. And, you know, taking all the inferences in favor of the plaintiff in this case, the ibuprofen just wasn't working. And ibuprofen is just an over-the-counter medication, the stronger medication that you can take if you have severe back pain. And as pled by the plaintiff, Dr. Wolfe had to do something more than simply tell the plaintiff, you know, it's either ibuprofen or nothing. That's an ultimatum, which would permit the inference that there's subjective recklessness on the part of the doctor. And, you know, defendant's brief raises a lot of issues that are probably more suitable for summary judgment, such as that the doctor's decisions are entitled to an assumption of regularity. That may be on a full record, you know, maybe you can show that the inmate was some other treatment that the plaintiff didn't want, but was good enough under the Eighth Amendment. There are cases that say that, that if you're getting some treatment, the inmate doesn't decide what the treatment's going to be. That's not the case here, at least not as alleged in the complaint. Oh, is there anything alleged in the complaint to suggest that Dr. Wolfe had any kind of animus towards Mr. Thomas? Other than an apparent impatience with plaintiff's persistent request that she take care of his pain, you know, animus and deliberate indifference, I think, are two separate contexts. Animus really goes to intent. Deliberate indifference is really subjective recklessness under the cases. You don't have to show that she personally wanted to see the plaintiff suffer, or that she didn't like the plaintiff, or she was just trying to save money, or that there was retaliation. That's not deliberate indifference. Deliberate indifference is when you're aware of a problem, you're in a position to do something, and you just subjectively decide that you're not going to take care of it for whatever reason. I don't think she had an obligation then to prescribe opiates. I mean, that seems to be what you're saying. Say it again. You seem to be suggesting that there was an obligation here to prescribe opiates on the complaint based on the complaints of a patient. Either opiates or some pain relief, you know, whether it's opiates or muscle relaxants or something else beyond ibuprofen. I mean, you know, again, ibuprofen is not cutting it on these facts, and she has to do something else. Deliberate indifference exists when you know that your course of treatment is not working, and you don't do anything to fix it. Let me suggest to you that what's perhaps a stumbling block, if your claim is that she was deliberately indifferent for not prescribing opiates, is that there's a general sense that even people who have surgery are expected to stay on opioids for a quite limited period of time. I thought you were urging us to view your complaint or to view Mr. Thomas's complaint as one suggesting that if ibuprofen is not working and the doctor gives the patient nothing else, no alternative treatment, that there's an inference of indifference that can be raised because there's a range of medications short of opioids that might be given. Did I misunderstand how you're urging us to look at this? No, your honor has exactly summarized our argument. There's a range of things you can do when somebody is suffering this kind of pain, and if ibuprofen is not working, then you have to do something else. There are treatment options available between ibuprofen and opiates. Let me ask you a question to make sure I didn't miss something in the record. In October of 2016, the attached documents reference an expected appointment with the surgeon, and there was even a suggestion that Dr. Wolf had said she wanted to see what the surgeon said before she decided how to proceed with treatment. Now, this is October 16th, and I know your complaints go well into the next year, but do we have anything in the record that indicates what the surgeon's report was on that further examination? No, we don't, and I just want the court to know that... I just wanted to make sure I hadn't overlooked it. That's all. I didn't find it, and I wanted to make sure I hadn't overlooked it. I don't see it, and I just want the court to know that the district court record contains some documents that were not attached to the complaint. That's ECF 12, and you know, those aren't particularly extensive either, but they do provide some dates. But no, you know, Your Honor's question is something that probably would be explored in discovery. Inmate complaints don't always give us the detail that we want, but I think under ICBAL, under the deliberate difference test, we had enough here for this case to proceed to discovery. Beyond that, I have nothing further. Okay, thank you, Mr. Bertucci. You've reserved a couple minutes for rebuttal. We'll now hear from Mr. Vora. Three minutes rebuttal, sorry. I said a couple. You've got three minutes for rebuttal. Mr. Vora, you've got ten minutes. Thank you, Your Honor. May it please the court, my name is Amit Vora, and I represent Dr. Wolfe, the state appellee. This court should state an Eighth Amendment claim, and Your Honor's Hill controls this case. There, as here, the plaintiff attempted to base an Eighth Amendment claim on the allegation that Motrin or ibuprofen was not strong enough for his excruciating pain, but this court held that he cannot state an Eighth Amendment claim merely by putting forward his allay unsupported opinion that the medical professional was wrong. So that is precisely this case. Now in the reply brief, Thomas attempts to evade the rule set forth in Hill by suggesting that, well, the Westchester surgical team had prescribed him opioids, but his appointments with Dr. Wolfe were 16 months after the surgery, and Thomas alleges no facts explaining why a short-term, three-week opioid treatment that the Westchester surgical team had given him immediately after the surgery while he was lying in the hospital bed would still be acceptable 16 months later. He also does not allege what, if anything, he said. Excuse me. I asked Mr. Bergstein, and he agreed that the complaint should not be construed to suggest that the defect was not giving him opioids, that it could be understood to state a broader claim than that, that the deliberate indifference is offering him only one kind of and he's still in acute pain. So tell us why that doesn't at least get them, you know, past the dismissal hurdle. Your Honor, that's precisely what happened in Hill as well. In Hill, the plaintiff was only given the option of Motrin, and the plaintiff said that's not effective pain medication for me. But this court said that, well, if all the plaintiff has to say is that the medical treatment he's being given is not enough, and the medical professional disagrees, that sort of mere disagreement cannot create a constitutional violation. So yes, the opioids may be a red herring. The point is, Dr. Wolf offered him the option of ibuprofen. Thomas disagreed with that medical judgment, but that's not enough to create a constitutional violation here. And in fact, the complaint in Hill included more factual content than the complaint here, and yet that complaint in Hill was still dismissed. Here, Thomas does not allege what, if anything, he said to Dr. Wolf to give Dr. Wolf an understanding of the nature of his pain, the nature of his upset stomach. In fact, he's had four tries now to state a claim. We're on the third amended complaint, and we still don't even know where his pain is emanating from. He doesn't even mention that this excruciating pain is from his back. In contrast, in Hill, the plaintiff specified what had happened, where the pain is emanating from, specified the content of the conversation with the medical professionals, but that's still enough because, again, a mere disagreement with the medical professionals is not enough to create a constitutional claim. Thomas also, in his briefs, does not cite any case where a complaint that was so lacking in factual detail survived a motion to dismiss. In the argument just now, Thomas's counsel conceded that this claim boils down to two paragraphs of the complaint, two one-sentence paragraphs. But I should note, Your Honors, that in an earlier iteration of the pleading stage, my brief lays out the convoluted nature of the pleading stage. But at one point, a district court dismissed his claim against Dr. Wolfe without prejudice because he had failed to state a claim. The district court said that this amounts to mere disagreement. And then, in his amended complaint, Thomas just merely repeated the precise allegations. So he has nothing else to say about Dr. Wolfe. All he's saying is that he has this pain from a surgery 16 months ago. And based on that objectively unreasonable. I should also note that Dr. Wolfe wasn't the only one who said that ibuprofen is his only option. By his own allegations, Thomas alleges that the entire medical staff at Sullivan said that ibuprofen was Thomas's only option. Now, we haven't even discussed the subjective prong of this case. And on the subjective prong, Thomas has no allegations suggesting that Dr. Wolfe, excuse me, had a culpable state of mind. Again, Hill is Yes, Your Honor. And in the briefing, Thomas argues that well, Dr. Wolfe stated at one point that it's either ibuprofen or nothing. And one can infer a callous disregard for his health based on that statement. But that's also what happened in Hill. In Hill, the plaintiff said, they're telling me that it's motion or nothing. But the court in Hill said, there is no allegation that the medical providers acted with a culpable state of mind and view the foregoing, the complaint is insufficient. So to hear, no chance provides a guidepost chance is a case, a case from this court that illustrates what sorts of allegation would pass muster under the subjective prong. There the court said, crucially, the plaintiff has alleged that the doctors recommended the treatment not in the basis of their medical views, but because of monetary incentives. This allegation of ulterior motives, if proven true, would show that the defendants had a culpable state of mind. That's not the case here. So Your Honors, the lodestar for this case is Hill. The state believes that Hill controls this case. Okay, let me see if there's any questions from the panel. No, thank you. No. All right. Thank you, Mr. Vora. Mr. Bergstein, back to you for three minutes. Thank you. I have three points. First, in Hill, this court's ruling indicates that plaintiff did get some medical treatment, a cast was applied, which would be sufficient if you have a broken bone in your wrist, the pain is not going to from Hill. My adversary suggests we don't know where the pain is emanating from in this complaint. I think we do know it was back pain. That's where it all starts on paragraph 24. Finally, there seems to be some confusion about the timing of all of this. It's in the state's brief, and we heard it again that there was a 16 month gap between the plaintiff's surgery and Dr. Wolf's alleged indifference. No, the surgery was June of 2016, not June of 2015. The 2015 date appears in the state's brief. That's not correct. It's in all the records that it's June of 2016. Plaintiff's claims against Dr. Wolf and her deliberate indifference and her suggestion that it's ibuprofen or nothing were not 16 months later. According to some of the records in the ECF file at docket 12, he began filing grievances and writing letters about this in March and April of 2017. There's a tighter timeframe, but if he's still in excruciating pain, I don't know if it matters how long the time gap was if he's not getting reasonable medical treatment. We asked this court to reinstate this claim to allow the parties to litigate this claim, this case in discovery, and if the issues the state raises have any merit, they should probably come about on a motion for summary judgment, not a motion under Rule 12. Thank you. I guess the one question I have, the complaint doesn't really say when Dr. Wolf said these things or when she saw your client, right? That is true. He doesn't assign a date to her documents in ECF 12. He filed a grievance in April of 2017 where he quotes her making that same comment. I assume that she said this sometime in the spring, and that's somewhat corroborated by a complaint he wrote to the nurse administrator on March 25th, again, ECF 12, page 14, where he is talking about, I can't bend, I can't move, I'm in serious pain, nothing is being done about this. So, you know, to the extent we need a date for when she made these comments, that's the closest I can find based on the limited record we have here. That would be then 10 months or so after the surgery, by your calculation? Evidently, but I don't know if the 10-month gap is fatal to his claim if he's still on surgery. Just give or take. You're saying it's not 16 months, it's 10 months or so? At the most 10 months, because we don't know precisely when she made that comment, but the latest that she would have made it would have been in April of 2017, because that's when he filed the grievance in connection with that statement. All right. Okay. Well, thank you very much. Thank you. We will reserve decision, and now we'll move